JOHNSON *v*. THE STATE.

1. Under the code, an indictment alleging that the accused " with arsenic poison, and other poisons to the grand jurors unknown, but all being weapons likely to produce death, did unlawfully, and with malice aforethought, make an assault upon" a named person "by putting said arsenic poison, and said other poisons to the grand jurors unknown, into coffee, and administering the said poisons to the said" person, charges the offence of assault with intent to murder with sufficient certainty and fullness.

2. Where the accused put a deadly poison into coffee with the intent and purpose that the same should be drunk by another, who without knowing of the presence of the poison actually drank of the coffee, the poison was "administered" to him by the accused, and in so doing the latter committed an assault.

3. Though poison introduced into the stomach, is not, accurately speaking, a "weapon," an assault with intent to murder may be thus committed. This offence may be committed without using a weapon of any kind.

4. On the trial of an indictment for assault with intent to murder by administering poison, a charge that "if it should appear from the evidence that, whether this defendant did it or not, that several " members of a family "were poisoned, as to whoever did it with a view to poison and kill them, it would be an offence and a crime as to each and all of them," in the absence of a request for more specific instructions as to the *corpus delicti*, sufficiently calls the attention of the jury to the necessity of proving the *corpus delicti*.

5. If one puts a deadly poison into coffee, intending that several members of a family shall drink it, the act, in legal contemplation, manifests express malice towards one of these members, whether the accused had actual ill will towards him or not.

6. The evidence was sufficient to authorize the verdict, and no error requiring a reversal of the judgment below appears in the numerous grounds of the motion for a new trial, complaining that the court intimated opinions as to the evidence; that improper conduct on the part of the solicitor-general was permitted; that the court erred in charging upon the law of circumstantial evidence, upon the prisoner's statement, and upon other matters and questions; that illegal evidence was admitted, and that the conduct, rulings and decisions of the court in many other specified particulars were erroneous.

May 8, 1893.

Assault to murder  Before Judge RICHARD H. CLARK. Fulton superior court.  September term, 1892.

J. C. JENKINS, for plaintiff in error.

C. D. HILL, solicitor-general, contra.

LUMPKIN, Justice.

1. An indictment against Sarah Johnson, charging her with the offence of assault with intent to murder, alleged to have been committed upon the person of Paul Romare, was, at the last term of this court, held insufficient because wanting in due certainty, and failing to describe the offence with sufficient particularity to enable the accused to make a defence. See *Johnson v. The State*, 90 *Ga.* 441, 16 S. E. Rep. 92. This indictment was afterwards quashed, and another for the same offence was returned against the accused. The material parts of the latter appear in the first head-note. It is substantially the same as the first indictment, except that it adds that the accused made the alleged assault by putting the arsenic and other poisons into coffee and administering the same to Mr. Romare. With this addition, we think the indictment should be sustained. It now meets the requirements of section 4628 of the code, and states the offence plainly enough to enable the accused and the jury to easily understand the nature of the charge made. No person of ordinary common sense would have any difficulty in understanding that the indictment means to charge an attempt to take the life of Mr. Romare by introducing a deadly poison into his stomach, and this, under the above cited section, is sufficient.

2. The charge is that the accused " administered " the poison. The proof shows that it was put into coffee with the intent and purpose that the same should be drunk by Mr. Romare and several members of his family, in ignorance of its presence in the coffee, and that he and some of them, without knowing the poison was in the coffee, did drink of the same. These facts sufficiently establish the administering of the poison. 2 Bish.

Crim. Proced. §645. They also establish the commission of an assault. This last proposition is sustained by Com. *v.* Stratton, 114 Mass. 303, holding that one is guilty of an assault and battery who, knowing that a thing contains a foreign substance, such as cantharides, and concealing the fact, delivers it to another to be eaten, if the other, in ignorance of the fact, eats it and is injured in health. Wells, J., who delivered the opinion in that case, cites Reg. *v.* Button, 8 C. & P. 660, in which case it was held that one who put Spanish flies into coffee to be drunk by another was guilty of an assault. Although later English cases seem to overrule this decision, we agree with Judge Wells in the opinion that it is more consistent with general principles, and the better law.

3. Poison introduced into the stomach is not, accurately speaking, a weapon, if, indeed, it may be called a weapon at all; but nevertheless, we are of the opinion that an assault with intent to murder may be committed by administering poison in this manner. In *Monday* v. *The State*, 32 *Ga.* 672, this court held that an assault with intent to murder might be committed without the use of a weapon of any kind. In that case, the homicide was attempted by choking. In a sense, the strong hands of the assailant might be regarded as natural weapons, like the claws of a lion, or the fangs of a serpent; but the indictment did not allege the use of any weapon whatever. There is very little substantial difference between assault with intent to murder and an attempt to murder, and we do not now recall any case in this State where an attempted homicide, done in malice, has been technically charged in an indictment as an "attempt to murder."

4. Complaint was made in the motion for a new trial that the charge of the court assumed that the *corpus delicti* had been proved, and did not submit this issue to

the determination of the jury. There was no request for any specific instructions upon this question. We think the portion of the charge quoted in the fourth head-note was sufficient to direct the attention of the jury to the necessity of the State's proving that the crime charged was actually committed. Indeed, it is hardly possible that the jury would have found the accused guilty if the proof failed to show that the crime had been committed. In other words, they would not have said by their verdict they were satisfied beyond a reasonable doubt of the guilt of the accused, in the absence of proof sufficient to show the guilt of any one. Besides, an inspection of the record in this case will leave no room for reasonable doubt that a deliberate attempt was made to administer poison to Mr. Romare and his family. Whether the accused did it or not, there was ample evidence to prove the *corpus delicti*.

5. The court, in charging upon the law of express malice, used the following language : " Are there any external circumstances presented to you which go. to satisfy your mind that she [the accused] was actuated by malice toward Mr. Romare *or any member of his family ?*" Error is alleged in the use of the words italicized, it being insisted that as Mr. Romare is the only person upon whom the accused is alleged to have committed the crime of assault with intent to murder, it is entirely immaterial whether the facts and circumstances showed she had express malice against any member of his family or not, and that these words were calculated to mislead the jury. The proof establishes that poison was put into the coffee with the intention that several members of the family, including Mr. Romare, should partake of the same, and that the accused did have express malice towards Mrs. Romare and actually intended to poison her with the coffee. This being so, the malice towards Mrs. Romare, under the circumstances, was, in

a legal sense, malice towards Mr. Romare, whether the accused had actual ill will against him or not. Besides, such conduct betrayed a reckless disregard of his life equivalent to an actual intention deliberately to kill him, and this meets in terms the definition of express malice as given in the statute. If alluding in this connection to Mr. Romare's family was erroneous at all, the error was harmless and immaterial.

6. The motion for a new trial in this case contained thirty-five grounds, including the usual grounds that the verdict was contrary to evidence, without evidence to support it, etc. In our opinion, the evidence was sufficient to authorize a conviction, and this being the second verdict establishing the guilt of the accused, although the first was rendered upon an insufficient indictment, we are not disposed to control the discretion of the trial court in sustaining the finding of the jury.

As to the remaining grounds of the motion other than those above referred to, we do not think a discussion in detail would result in any practical good. These latter grounds complain that the court erred in intimating opinions as to the evidence; in permitting improper conduct on the part of the solicitor-general; in charging upon the law of circumstantial evidence and the prisoner's statement; in charging as to the amount of proof necessary to convict when a crime is committed in secret; in admitting illegal testimony; in allowing the jury to take into their room a sample of the coffee into which it was alleged the poison had been placed; and in other particulars which are not of sufficient importance to be mentioned. In some of the matters covered by these several complaints, we think the court did commit errors, but they are not such, singly or collectively, as to require a reversal of the judgment denying a new trial. In many of the grounds no error at all appears. The charge as a whole was entirely impartial,

and the jury arrived at their conclusion upon a fair consideration of the substantial merits of the case. It is not absolutely certain that the accused committed the crime, but the tribunal which the law has constituted for the purpose of settling and determining questions of guilt or innocence (the jury) has found against her. This finding has been approved by an honorable magistrate who had the discretion to review it, and our duty leaves us no alternative but to affirm his judgment.

*Judgment affirmed.*